IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

UNITED STATES OF AMERICA,

        Respondent,

V.                                          CRIMINAL NO. 3:00-00062-03
                                          (CIVIL ACTION NO. 3:03-2220)

SPENCER T. MYERS,

        Movant.

**FINDINGS AND RECOMMENDATION**

On June 22, 2000, a jury found Spencer T. Myers guilty of all counts on an indictment in which he was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2) and (e)(1), distribution of cocaine base, in violation of 21 U.S.C. §841(a)(1), possession and use of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §924(c)(1)(A), knowing possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§922(k) and 924(a)(1), and corruptly persuading another to hinder an investigation, in violation of 18 U.S.C. §1512(b)(3). On September 11, 2000, he was sentenced to life imprisonment and to a consecutive term of 300 months. His conviction was affirmed on appeal and a petition for writ of certiorari was denied by the Supreme Court on October 7, 2002. Thereafter, Myers filed a motion under the provisions of 28 U.S.C. §2255, seeking to have his conviction and sentence set aside. In his motion, Myers contends that counsel representing him at trial and on appeal provided ineffective assistance. The United States has filed a response to the

motion, movant has filed a reply and the matter is ripe for disposition. The facts relevant to decision on the motion can be summarized as follows:[1]

Sometime after Myers shot and killed Robert Shilot, who had come to his home for the purpose of purchasing drugs and was subsequently accused by Myers of stealing his crack cocaine, Myers' girlfriend, Kelly Ward, who had witnessed the shooting, called 911. Ward reported that Myers had shot Robert Shilot and then left the home at 804 Fifth Street in Huntington, driving an older model Ford LTD. Officers of the Huntington Police Department arrived at the home at around 9:35 a.m., shortly after Ward made the call, and upon entering found Shilot's body "lying on the floor" in the kitchen, "a large pool of blood around him." About an hour later Myers was seen in the vicinity of 14th Street West in Huntington driving the Ford LTD. He was stopped,[2] ordered or taken out of the car, taken to the ground, frisked "and then asked where the gun was." Myers told the officers the gun "was in the car."[3] After being taken to police headquarters and given his Miranda[4] rights, Myers gave a statement admitting that he shot Shilot but characterizing it as having occurred after Shilot grabbed and pushed Kelly Ward. Ward's testimony at trial indicated

---

[1] See also, United States v. Myers, 280 F.3d 407 (4th Cir. 2002).

[2] Myers apparently contends that he had parked and was out of the car when first accosted by the officers; however, the difference in the two versions is not significant insofar as the Court's decision is concerned.

[3] Myers adds that when the officer looking in the car did not see the gun, he asked, "Where at in the car," to which Myers responded, "In the bag on the front seat." Again, this possible disparity in the versions of the event has no effect on the Court's analysis. Myers also advised his attorney, and presumably still contends, that the officers removed the bag with the gun and drugs in it and "placed the bag with the gun and drugs in the trunk" of their car. The Court determined at the suppression hearing, however, that the guns and drugs were removed from the car later that day, following the issuance of a search warrant.

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

that Myers shot Shilot after holding him at gun point for a lengthy period of time and immediately after Shilot had used his cell phone to call 911. While Myers was giving this statement, other officers of the Huntington Police Department were preparing applications for search warrants for the house and the car. The applications were presented to a magistrate around 12:30 p.m. and, following issuance of the search warrants, Myers' automobile, which had been taken to a storage area, was searched. Among the items recovered from the vehicle was a gun, subsequently determined to have been the weapon used to kill Shilot, and a quantity of marijuana and cocaine base.

Movant's counsel filed a motion to suppress, asserting, inter alia, that items, including the gun, "seized pursuant to a search warrant" had been "seized prior to the issue and service of the aforesaid search warrants, without lawful cause, and in violation of defendant's Fourth Amendment rights."[5] While Myers obviously misled his attorney concerning the facts surrounding his arrest and the removal of the gun and drugs from his car, he now asserts that "counsel failed to secure Mr. Myers' a full and fair suppression hearing," contending that counsel should have established that Myers was arrested without probable cause, that a statement was obtained from him "in violation of Miranda," and that the search warrant for the automobile was invalid. He also asserts that counsel failed to properly investigate the facts and present witnesses at the suppression hearing.[6]

---

[5] Counsel based his motion on information provided by Myers. As previously noted, the Court determined that the evidence sought to be suppressed was "seized pursuant to valid search warrants which were issued prior to the seizure of the evidence."

[6] Myers' claims with respect to ineffective assistance of appellate counsel are based on a claimed failure to argue that his arrest was without probable cause, statements were given without Miranda warning and the gun and drugs were illegally seized from the automobile. In light of the

In ruling on movant's claim of ineffective assistance, the Court evaluates counsel's performance under the standards established by the Court in Strickland v. Washington, 466 U.S. 668 (1984), recognizing that the proper standard for attorney performance is that of "reasonably effective assistance" and that movant must establish not only "that counsel's representation fell below an objective standard of reasonableness," id. at 687-88, but that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Scrutiny of counsel's performance under such constitutional standards does not contemplate that the Court will apply a "set of detailed rules for counsel's conduct" and in evaluating ineffectiveness claims "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688. Recognizing the "constitutionally protected independence of counsel" and the "wide latitude counsel must have in making tactical decisions," the Supreme Court admonished reviewing courts that, in resolving ineffectiveness claims, "scrutiny of counsel's performance must be highly deferential," that every effort must be made "to eliminate the distorting effects of hindsight" and that the challenged conduct must be evaluated "from counsel's perspective at the time." Id. at 689. Moreover, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be consider sound trial strategy.'" Id. Utilizing these standards, the Court does not find in the motion or in the record of this case any basis for concluding that counsel's performance was deficient.

---

Court's conclusion that these claims lacked merit, his claims with respect to ineffective assistance of appellate counsel, similarly, provide no basis for relief.

With respect to movant's contention that he was arrested without probable cause and that counsel should have established this fact at the suppression hearing, it is clear that, contrary to his assertions, movant's arrest was not violative of the Fourth Amendment. As the Court pointed out in Michigan v. DeFillippo, 443 U.S. 31, 36-37 (1979), "[i]t is not disputed that the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense," and probable cause is established if "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." In this case, the officers[7] had been informed of a shooting by an eye witness to the event and they confirmed her information upon arriving at movant's home. They had also been advised that movant had driven away from the home and were given a description of his automobile. Upon spotting movant in the 1986 Ford LTD officers were again able to confirm the information Kelly Ward had provided them. These facts were obviously sufficient to cause a "prudent person" to believe that Myers had committed an offense and, as a consequence, his arrest was supported by probable cause.

Movant next asserts that counsel should have sought suppression of his statement concerning the location of the gun since it was made after he had been arrested and was in response to questioning by the officers prior to advising him of his rights under Miranda. There is, however,

---

[7] Although it appears that at least one of the officers present at the time of Myers' arrest was aware of all the facts establishing probable cause, it is, of course, "not necessary for the officers actually making the arrest ... to be personally aware of those facts," United States v. Laughman, 618 F.2d 1067, 1072 (4th Cir. 1980), and probable cause "can rest upon the collective knowledge of the police, rather that solely on that of the officer who actually makes the arrest." United States v. Pitt, 382 F.2d 322, 324 (4th Cir. 1967).

a "public safety" exception to the requirement that Miranda warnings be given before questioning a suspect, New York v. Quarles, 467 U.S. 649 (1984), and when, as in the circumstances presented here, an officer asks a question "reasonably prompted by a concern for public safety," his own, that of his fellow officers or others, "the need for answers ... outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." Id. at 656-57.  Thus, the absence of Miranda warnings prior to questioning Myers about the location of his gun provided no basis for suppression of his response and counsel was clearly not ineffective in failing to urge suppression on that basis.

Movant next asserts the invalidity of the search warrant for the automobile, and, while the Court has some difficulty understanding his arguments, to the extent those arguments rely on a claimed arrest without probable cause and statements made without Miranda warnings, they clearly provide no basis for questioning counsel's effectiveness in seeking to suppress evidence secured by means of the search warrant.  Further, as the Court concluded at the suppression hearing, the issuance of the search warrant was clearly proper in light of the information presented to the magistrate.

Finally, movant complains that counsel failed to present as witnesses at the suppression hearing all of the officers involved in his arrest.  Significantly, he does not assert that counsel failed to interview the officers.  Indeed, it appears that he did.  Nor does movant provide any basis for concluding that the testimony of the officers not called would differ in any respect from that of the officers testifying at the hearing.  Under such circumstances, mere speculation that additional witnesses might have proved helpful clearly provides no basis for questioning counsel's performance.

6

## **RECOMMENDATION**

On the basis of the foregoing findings of fact and conclusions of law, it is **RESPECTFULLY RECOMMENDED** that the relief sought in this §2255 proceeding be denied.

Movant and respondent are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 8(b), Rules Governing §2255 Cases, the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the specific portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to movant and all counsel of record.

DATED:  March 21, 2005

_\[signature\]_
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE